## IN THE UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF KANSAS

RES-CARE, INC.,                    )
                                   )
                    Plaintiff,     )      **CIVIL ACTION**
                                   )
v.                                 )      No. 03-1224-MLB
                                   )
AMERICAN INTERNATIONAL SPECIALTY   )
LINES INSURANCE COMPANY,           )
                                   )
                    Defendant.     )
_____)

### MEMORANDUM AND ORDER

Before the court are the following:

1.   American International Specialty Lines Insurance Company's (AISLIC) motion for summary judgment (Doc. 13, 14);

2.   Res-Care Inc.'s (Res-Care) response (Doc. 19); and

3.   AISLIC's reply (Doc. 22).

### Background

This insurance coverage dispute arises from a wrongful death and survivorship action which was tried in this court in 2001 (Lake v. Res-Care, Case No. 98-1019-JTR). The plaintiff in the underlying case was Nellie Lake, the heir-at-law and personal representative of the Estate of Christine Zellner, who was a patient at Golden West Skills Center from January 15, 1996 until her death on January 28, 1996. Res-Care Kansas, Inc. (Res-Care Kansas), one of the defendants in the underlying action, is a subsidiary of Res-Care. Res-Care, the plaintiff in this case, was also a defendant in the underlying case. Res-Care Kansas was doing business as Golden West Skills Center, an intermediate care facility for the mentally retarded. Lake filed suit against Res-

Care Kansas and Res-Care for the wrongful death of Zellner.

The jury rendered a verdict in favor of the plaintiff for compensatory damages totaling $1,510,000 and, in addition, it rendered an advisory verdict on the issue of punitive damages in the amount of $2,500,000. U.S. Magistrate Judge John Thomas Reid, who presided, applied comparative fault and statutory caps and entered a compensatory damage judgment against Res-Care Kansas and Res-Care for $104,233.[1] Judge Reid subsequently awarded punitive damages against Res-Care Kansas and Res-Care in the amount of $1,000,000 (Lake, Doc. 666).

All parties appealed, but before the appeals were decided, Lake entered into a settlement agreement and release with Res-Care Kansas and Res-Care on November 21, 2002 for $747,500. The agreement contained the following provision: "The payments herein shall be for compensatory damages based upon issues of appeal, including costs and interest, except that $79,000 of the amount paid by Res-Care Kansas d/b/a Golden West Skills Center and Res-Care shall be considered and allocated to 'punitive damages.' (Doc. 14, Exh. F at 3).

AISLIC provided a defense through the litigation and trial of the Lake case (Doc. 14, Exh. H at 4, ¶ 13). AISLIC was not a party to, and apparently had no role in, the settlement agreement.[2]

---

[1]Compensatory and punitive damages were assessed against Res-Care based on the jury finding that Res-Care Kansas and Res-Care are alter egos, acting as one corporation.

[2]The policy issued to Res-Care by AISLIC provided:

  2. Duties in the Event of Occurrence, Offense, Claim or Suit

On July 17, 2002, Res-Care sued AISLIC in Kentucky state court seeking a declaratory judgment regarding coverage under an insurance policy issued to Res-Care by AISLIC.[3]   The case was removed to the United States District Court for the Western District of Kentucky on August 21, 2002.   In a memorandum opinion filed June 26, 2003, that court granted AISLIC's motion to transfer the case to this court.   In doing so, the court observed, in part:

> First, AISLIC's activities indicate that they should have reasonably anticipated being haled into court in Kansas. World-Wide Volkswagen [v. Woodson, 444 U.S. 286, 297 at (1979)]. AISLIC agreed to provide insurance coverage for a Kansas subsidiary, for claims arising in Kansas. The Tenth Circuit has held that by contracting to defendant the insured in the forum state, the insurer creates some contact with the forum state. OMI Holdings, Inc. v. Royal Insurance Company of Canada, 149 F.3d 1086, 1095 (10th Cir. 1998).[1]   Moreover, in the contract itself, AISLIC agrees to "submit to a court of competent jurisdiction within the United States."

> Second, this suit arises out of AISLIC's contacts with the state of Kansas. It agreed to provide insurance coverage within Kansas, and this claim arises out of the denial of coverage of an incident that occurred in Kansas, and is based upon a judgment that was rendered in an Kansas court.

> d. No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense . . . without our consent.

The record is silent regarding why AISLIC did not participate in the settlement.   In any event, AISLIC has not raised this provision or the settlement as a bar to its obligation to pay all or part of the settlement.   In a letter dated October 3, 2003, AISLIC tendered Res-Care the sum of $111,916.84 representing the compensatory damages judgment of $104,233 plus interest.   (Doc. 14, Exh. G; Doc. 19, ¶ 12).   Res-Care rejected the tender on January 9, 2004 (Doc. 14, ¶ 13).

---

[3]AISLIC had indicated in a letter to Res-Care dated July 11, 2001 that statutory law in Kansas prohibited insurance of punitive damages, and therefore AISLIC would not cover any portion of a punitive damages award (Doc. 19, Exh. 2(1)).

Here, Kansas is the more convenient forum for the parties and witnesses, as well as the judicial system. The underlying action took place in Kansas, and the insured risk is located there. The underlying claims arose from a wrongful death in Kansas and all of the events giving rise to the claims occurred there. Kansas law was applied to the underlying action and the jury's verdict was returned in accordance with that law. Kansas has a clear interest in determining responsibility for a punitive damages awarded in its courts.

Moreover, without resolving any dispute over the choice of law, whether Res-Care management was aware of, or authorized the wrongful conduct of its employees may be determinative of the coverage issue in this case. Evidence regarding that issue would come from employees of Res-Care Kansas, and records located there. The Kansas court has already heard evidence regarding ResCare management's knowledge of the conduct of its employees. Judicial economy would be best served by allowing the same court that heard the underlying tort action to also consider the coverage issue.

Any prejudice to plaintiff will be avoided because in actions transferred pursuant to 29 [sic] U.S.C. 1404, the choice of law principles of the transferor state apply to this action.

[1]After determining that there were some minimum contacts, the Tenth Circuit went on to find that notions of fundamental fairness preclude the exercise of jurisdiction by a Kansas court over a Canadian Insurance company that agreed to insure an Iowa corporation. The distinction in the case at bar is that AISLIC specifically agreed to insure Res-Care Kansas, for claims that arose in Kansas.

At the time of the transfer, Res-Care's motion for judgment on the pleadings and motion for leave to file an amended complaint were pending. These pleadings have been docketed in this court as docket entries 12 and 5, respectively.[4]

_____

[4]The court has reviewed Res-Care's Motion for Judgment on the pleadings, AISLIC's Response and AISLIC's Reply, all of which were filed in the Kentucky case. The motion is brought pursuant to Fed. R. Civ. P. 12(c) but numerous exhibits are attached. AISLIC attached exhibits to its Response. Ordinarily, the court would advise the parties that it would convert the motion to one for summary judgment as required by Rule 12(c). In this case, however,

-4-

<u>Policy Provisions</u>

AISLIC provided Res-Care, the insured, with commercial general liability insurance for a time period from July 1, 1995 to July 1, 1996.  Under that policy, AISLIC agreed to pay "those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury'" provided the "'bodily injury' is caused by an occurrence that takes place in the 'coverage territory.'" "Coverage territory" includes the United States.  Exhibit I at Section I.1.a-b and V. 4.

The policy excludes from coverage bodily injury "expected or intended" from the standpoint of the insured."  Exhibit I at Section I.2.a.

The policy has no specific exclusion for punitive damage awards, nor does it contain a choice of law provision.

<u>Standards for Summary Judgment</u>

Rule 56(c) of the Federal Rules of Civil Procedure directs the entry of summary judgment in favor of the party who "shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A principal purpose "of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses ...." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323-24, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265, 274 (1986).  The court's

---

such advice is unnecessary because all of the issues are rebriefed in the submissions to this court.  <u>Cf.</u> <u>Burham v. Humphrey Hospitality Reit Trust, Inc.</u>, ___ F.3d ___ (10th Cir. 2005).  When appropriate, the court has referred to the parties' submissions in the Kentucky case.

inquiry is to determine "whether there is the need for a trial--whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202, 213 (1986). "Entry of summary judgment is mandated, after an adequate time for discovery and upon motion, against a party who 'fails to make a showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.' " Aldrich Enters., Inc. v. United States, 938 F.2d 1134, 1138 (10th Cir.1991) (quoting Celotex, 477 U.S. at 322, 106 S. Ct. at 2552, 91 L. Ed. 2d at 273). Summary judgment is inappropriate, however, if there is sufficient evidence on which a trier of fact could reasonably find for the non-moving party. Prenalta Corp. v. Colorado Interstate Gas Co., 944 F.2d 677, 684 (1991).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact by informing the court of the basis for its motion. Martin v. Nannie and the Newborns, Inc., 3 F.3d 1410, 1414 (10th Cir. 1993). This burden, however, does not require the moving party to "support its motion with affidavits or other similar materials negating the opponent's claim." Celotex, 477 U.S. at 323, 106 S. Ct. at 2553, 91 L. Ed. 2d at 274. Once the moving party properly supports its motion, the non-moving party "may not rest upon the mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." Muck v. United States, 3 F.3d

1378, 1380 (10th Cir. 1993). The court reviews the evidence in the light most favorable to the non-moving party, e.g., <u>Thrasher v. B & B Chem. Co.</u>, 2 F.3d 995, 996 (10th Cir. 1993), under the substantive law and the evidentiary burden applicable to the particular claim. <u>Anderson</u>, 477 U.S. at 255, 106 S. Ct. at 2514, 91 L. Ed. 2d at 216.

<u>The Parties' Positions</u>

Generally, a federal trial court sitting in diversity applies the forum state's choice of law. However, where a case is transferred from one forum to another under 28 U.S.C. § 1404(a), as occurred in this case, then the transferee court must follow the choice of law rules of the transferor court. <u>Trierweiler v. Croxton & Trench Holding Corp.</u>, 90 F.3d 1523, 1532 (10th Cir. 1996). Both parties agree that the choice of law rules of the state of Kentucky apply in this case (Doc. 14 at 11; Doc. 19 at 7). The parties sharply disagree, however, regarding whether Kentucky would choose to apply its own law, or Kansas law, with respect to the insurability of punitive damages.

AISLIC's initial position is that the public policies of both Kentucky and Kansas prohibit insurance coverage for punitive damages and therefore no conflict of laws analysis is necessary. (Doc. 14 at 11-14; Doc. 22 at 4). AISLIC's predictable fallback position is that if a conflict of laws analysis is necessary, Kansas law, which prohibits coverage for punitive damages, applies. (Doc. 22 at 5-10). AISLIC also asserts that the policy excluded coverage for bodily injury "expected or intended from the

-7-

standpoint of the insured." (Doc. 14 at 9-11).

Res-Care responds that a Kentucky court would choose to apply Kentucky law, which allows for coverage of punitive damages. (Doc. 19 at 7-12). Res-Care asserts in the alternative that if Kansas law applies, AISLIC is still obligated to cover all but $79,000 of the $751,000 settlement agreed upon between Lake and Res-Care. Id. at 12-13. Finally, Res-Care contends that AISLIC is estopped from asserting its belated coverage defense. Id. at 13-18.

Analysis

AISLIC's threshold position is that both Kansas and Kentucky prohibit insurance coverage of punitive damages award. Insofar as Kansas is concerned, AISLIC has supported its position with authority, to which Res-Care has failed to respond, thereby conceding the point. (Doc. 14 at 12). The court does not agree, however, with AISLIC's position that Kentucky also prohibits coverage of punitive damage awards. In Continental Ins. Cos. v. Hancock, 507 S.W. 2d 146, 151-52 (Ky. App. 1973), the court stated: "Even though punitive damages are allowed solely as punishment and as a deterrent, we do not deem it against public policy to allow liability therefore to be insured against when the punitive damages are imposed for a grossly negligent act of the insured rather than an intentional wrongful act of the insured." AISLIC seeks to avoid the holding of Hancock by arguing that (1) Kentucky courts have not decided whether a corporation can insure against punitive damages imposed for the corporation's act of authorizing or ratifying its employees' wrongful conduct and (2) under the "general trend of authority," this court should predict that the Kentucky Supreme

Court would hold that Kentucky public policy bars all coverage of punitive damages.  It is difficult enough for this court to predict how the Kansas Supreme Court may rule on a specific issue, not to mention on a "general trend of authority."  The court will not attempt that feat with respect to the Kentucky Supreme Court.[5]

So, the question boils down to this: would a Kentucky court resolve this case by applying its own law or would it choose to apply Kansas law?  Before answering this question, it makes sense to resolve Res-Care's argument that AISLIC is estopped from raising a policy defense based on the policy exclusion for bodily injury expected or intended from the standpoint of the insured (Doc. 14 at 9-11; Doc 19 at 13-18).  AISLIC has not responded to Res-Care's argument, which the court deems to be a concession (Doc. 22).  The court will not construct an argument for AISLIC on this issue or render an advisory opinion.

<u>Application of Kentucky Choice of Law Principles</u>

In deciding the question of which state law to apply, Kentucky courts have adopted the test of which state has the most significant relationship to the transaction and the parties. <u>Restatement (Second) of the Conflict of Laws</u> § 188 (1971). <u>Breeding v. Massachusetts Indemnity & Life Ins. Co.</u>, 633 S.W.2d 717, 719 (Ky. 1982); <u>Lewis v. American Family Insurance Group</u>, 555 S.W.2d 579, 581-82 (Ky. 1977).  Therefore, controlling effect is

---

[5]Ky. R. Civ. P. 76.37 provides for certification of questions of law.  The court assumes that the parties are aware of this procedure.  The court is not inclined to certify a question unless requested by the parties.  In any event, this case has been on the docket too long to warrant certification.

given to the law of the jurisdiction which, because of its relationship or contact with the occurrence or the parties, has the greatest concern with the specific issues raised in the litigation. <u>Breeding</u>, 633 S.W.2d at 719.

Section 188 of <u>Restatement (Second) of the Conflict of Laws</u> provides:

> Law Governing in Absence of Effective Choice by the Parties
>
> (1) The rights and duties of the parties with respect to an issue in contract are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the transaction and the parties under the principles stated in § 6.
> (2) In the absence of an effective choice of law by the parties (see § 187), the contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:
> (a) the place of contracting,
> (b) the place of negotiation of the contract,
> (c) the place of performance,
> (d) the location of the subject matter of the contract, and
> (e) the domicil, residence, nationality, place of incorporation and place of business of the parties.
> These contacts are to be evaluated according to their relative importance with respect to the particular issue.

Section 6, referred to in § 188(1) provides:

> Choice-of-Law Principles
>
> (1) A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law.
> (2) When there is no such directive, the factors relevant to the choice of the applicable rule of law include
> (a) the needs of the interstate and international systems,
> (b) the relevant policies of the forum,
> (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
> (d) the protection of justified expectations,
> (e) the basic policies underlying the particular field of law,
> (f) certainty, predictability and uniformity of result,

and
(g) ease in the determination and application of the law
to be applied.

Resolving a choice of law issue is not an exact science, but rather an art form.  Each case is frequently fact driven and each case has to be analyzed within its own factual context.  <u>Mill's Pride, Inc. v. Continental Insurance Co.</u>, 300 F.3d 701, 709 (6th Cir. 2002); <u>International Insurance Co. v. Stonewall Insurance Co.</u>, 86 F.3d 601, 608 (6th Cir. 1996).[6]  When §§ 6 and 188 are read together, it is clear that they only provide a broad framework for the resolution of choice of law issues in the context of a contract dispute.  Within that framework, a judge must balance principles, policies, factors, weights, and emphases to reach a result, the derivation of which, in all honesty, does not proceed with mathematical precision.  <u>Mill's Pride</u>, 300 F.3d at 709-10; <u>Int'l Ins.</u>, 86 F.3d at 606.

Restatement § 188(2)

Res-Care is a Kentucky corporation having its principal place of business in Kentucky.  The insurance policy in question was sold to Res-Care by a Kentucky domiciled insurance agency for the period from July 1, 1995 to July 1, 1996. The policy was issued to Res-Care, delivered and counter-signed in Kentucky (complaint for declaratory judgment, ¶¶ 4, 5; admitted by defendant in its answer).  AISLIC acknowledges that the place of contracting, negotiation, and incorporation of Res-Care support the application

---

[6]Kentucky is in the Sixth Circuit, which probably explains why the parties have cited decisions of that court, even though the decisions do not interpret Kentucky law.

-11-

of Kentucky law.   Thus, factors (a), (b) and (c) set forth in
Restatement § 188(2) favor application of Kentucky law and AISLIC
admits that Kentucky law would apply if this case presented a
"simple coverage question." (Doc. 14 at 15).

Section 188(2)(d) relates to the location of the subject
matter of the contract.   The comment observes that when the risk
is the principal subject of the contract, it can be assumed that
the parties would expect the law of the state where the risk is
located to apply.   The risk was located in Kansas.   In this case,
however, the parties' expectations is a factor for consideration
under Restatement section 6, infra.

Section 188(2)(e) relates to the place of incorporation and
place of business of parties.   According to the notice of removal
filed in the Kentucky case, Res-Care is a Kentucky corporation with
its principal place of business in Louisville.   AISLIC is an Alaska
corporation with its principal place of business in New York.   The
parties have not specifically addressed this section or cited cases
which discuss it.   To the extent this factor is important, it would
appear to favor Kentucky.

### Restatement § 6

Section 6(2)(a), which addresses the needs of interstate
systems, has no discernable application.   Section 6(2)(b), which
requires consideration of the laws of the forum, is important.   As
has already been pointed out, Kentucky permits coverage of punitive
damage awards arising out of grossly negligent acts of the insured.
Hancock, supra. Kentucky courts have stated that when the only
contacts with Kentucky are that the tort occurred in Kentucky and

-12-

the tortfeasor resided there, those facts by themselves, are insufficient to justify the application of Kentucky law when the insurance polices were issued to non-resident litigants. Snodgrass v. State Farm Mutual Automobile Ins. Co., 992 S.W.2d 855, 857-58 (Ky. Ct. App. 1998); Bonnlander v. Leader National Ins. Co., 949 S.W.2d 618, 620 (Ky. Ct. App. 1996); see Lewis v. American Family Insurance Group, 555 S.W.2d at 581-82 (using § 188, in most cases the law of the residence of the named insured will determine the scope of the automobile insurance policy; therefore Indiana law, not Kentucky law applied when accident occurred in Kentucky and uninsured motorist was from Kentucky).   In this case, the tort occurred in Kansas and the tortfeasors resided in Kansas.   The policy was issued in Kentucky to Res-Care, the named insured and a Kentucky corporation.   Res-Care and Res-Care Kansas were acting as one corporation.   These circumstances seem to favor application of Kentucky law.

Section 6(2)(c) requires consideration of the relevant policies of other interested states.   Other than Kentucky, the only other interested state is Kansas, which has a policy against insurance coverage for punitive damages awarded under Kansas law. Kansas courts have stated that it would be undesirable for a Kansas tortfeasor to feel the 'pecuniary punch' of a punitive award while out-of-state tortfeasors could require their 'guiltless' insurance companies to pay such damages and thus not be subject to deterrence for committing reckless acts in Kansas.   Hartford Accident & Indemnity Co. v. American Red Ball Transit Co., 262 Kan. 570, 575, 938 P.2d 1281, cert. denied, 522 U.S. 951 (1997); St. Paul Surplus

Lines Ins. Co. v. International Playtex. Inc., 245 Kan. 258, 273, 777 P.2d 1259 (1989), cert. denied, 493 U.S. 1036 (1990).

AISLIC argues that the Kansas policy against insurance coverage for punitive damages favors the application of Kansas law, since the wrongful conduct took place in Kansas. AISLIC further argues that if Kentucky law is applied to permit insurance of punitive damages, Res-Care can avoid the pecuniary punch Kansas intends to impose on corporations operating in Kansas when they authorize wanton conduct by their Kansas employees. However, the mere fact that the tortious conduct of Res-Care took place in Kansas is not, of itself, a controlling factor in the choice of law analysis. See Hammer v. State Farm Mutual Auto Ins. Co., 950 F. Supp. 192, 193-94 (W. D. Ky. 1996) (law of state where insurance policy premiums paid [Indiana] controls over law of state where accident occurred [Kentucky]).

Section 6(2)(d) relates to the expectations of the parties. AISLIC points to Res-Care's admission that Res-Care Kansas was its alter ego. Thus, says AISLIC, Res-Care should have expected that Kansas law would apply to its insurance policy covering Res-Care Kansas and cannot now rely on Kentucky law to secure coverage for the punitive damages award. (Doc. 14 at 15-18). There are no facts regarding what either Res-Care or AISLIC "expected" with respect to coverage for punitive damages. On one hand, if AISLIC "expected" to exclude coverage for punitive damages awarded under Kansas law, it could have drafted the policy language accordingly. It didn't. On the other hand, Res-Care Kansas could not have "expected" to have coverage for punitive damages, at least under

-14-

Kansas law.

Would the parties have "expected" the evidence in the <u>Lake</u> case to satisfy Kentucky's requirements for an award of punitive damages?  The answer appears to be "yes."  Kentucky courts have stated that it is not against public policy to allow insurance to cover a punitive damages award for grossly negligent conduct.  In <u>Hancock</u>, <u>supra</u> at 151-52, the court held as follows:

> ...we do not deem it against public policy to allow liability therefor to be insured against when the punitive damages are imposed for a grossly negligent act of the insured rather than an intentional wrong of the insured.

In Kentucky, gross negligence requires an initial finding of negligence followed by an additional finding that the negligence was accompanied by wanton or reckless disregard for the lives, safety or property of others.  <u>Phelps v. Louisville Water Co.</u>, 103 S.W.3d 46, 51-52 (Ky. 2003); <u>City of Middlesboro v. Brown</u>, 63 S.W.3d 179, 181 (Ky. 2002); <u>Kinney v. Butcher</u>, 131 S.W.3d 357, 359 (Ky. Ct. App. 2004).  In the <u>Lake</u> case, the court found that, viewed in a light most favorable to the plaintiff, the actions or failures to act by employees of Res-Care were done with a realization of the imminence of danger and a reckless disregard or complete indifference to the probable consequences of the actions or failures to act.[7]  Thus, it is clear that gross negligence under Kentucky law is analogous to the definition of wanton conduct under

---

[7]In Kansas, wanton conduct is defined as follows: "An act performed with a realization of the imminence of danger and a reckless disregard or complete indifference to the probable consequences of the act is a wanton act." <u>Paida v. Leach</u>, 260 Kan. 292, 297, 917 P.2d 1342 (1996).

Kansas law.

When the <u>Lake</u> case was tried, instruction #28 stated that plaintiff claimed Res-Care Kansas acted in a willful, wanton, or malicious manner, and asked the jury to determine whether clear and convincing evidence had been presented that Res-Care Kansas acted in such a manner.  Instruction #30 defined wanton, willful, and malice.  Instruction #31 stated as follows:

> Punitive damages cannot be assessed against Res-Care Kansas, Inc. unless you determine that Res-Care Kansas, Inc. authorized or ratified the wanton conduct of an employee or employees complained of by the plaintiff. Therefore, to assess punitive damages against Res-Care, Kansas, Inc., you must first find that an employee or employees engaged in wanton conduct.  Then, you must find that Res-Care Kansas, Inc. authorized or ratified the wanton conduct.

(<u>Lake</u>, Doc. 641).  Instruction #31 made clear that the jury could not assess punitive damages unless it found an employee engaged in wanton conduct and that Res-Care Kansas authorized or ratified the wanton conduct.  Based on the jury instructions, it appears that the jury awarded punitive damages based on wanton conduct.  <u>See</u> <u>Hancock</u>, 507 S.W.2d at 152 ("...as to punitive damages, the instructions authorized recovery only in the event of gross negligence.  We must indulge the presumption that the punitive damages were awarded as a punishment for grossly negligent conduct").  Magistrate Judge Reid found that there was sufficient evidence that Res-Care had authorized or ratified the conduct of the employees at Golden West (Doc. 665 at 3-4; Doc. 631 at 4-6). These factors favor application of Kentucky law.

Section 6(f) relates to the goals of certainty, predictability and uniformity of result.  These goals and the protection of

-16-

justified expectations are furthered by the application of one state's laws to matters of contract interpretation. <u>Mill's Pride, Inc. v. Continental Insurance Co.</u>, 300 F.3d 701, 710-11 (6th Cir. 2002) and <u>Meijer, Inc. v. General Star Indemnity Co.</u>, 61 F.3d 903 (table), 1995 WL 433592 (6th Cir. 1995). AISLIC issued policies to residents of many states and chose not to tailor those policies to individual state laws. The goals of section 6(f) are met by applying Kentucky law to issues regarding policy coverage.

The remaining factors in Section 6 do not appear to be particularly relevant.

Conclusion

The analysis based on the factors set forth in §§ 188 and 6 of the Restatement favors the application of Kentucky law. The place of contracting, negotiation, and incorporation support the application of Kentucky law. Kentucky courts have held that the mere fact that the tortious conduct took place outside Kentucky is not, of itself, a significant factor in the choice of law analysis. Although Kansas public policy prohibits insurance coverage for punitive damages awarded under Kansas law, Kentucky courts have held that it is not against public policy to allow insurance coverage for punitive damages imposed for grossly negligent conduct which is similar to the wanton conduct found by the jury in this case. Kentucky courts have traditionally refused to apply the law of another state if that state's law violated a public policy as declared by the Kentucky legislature or courts. <u>State Farm Mutual Automobile Ins. Co. v. Marley</u>, 151 S.W.3d 33, 35 (Ky. 2004). Finally, the protection of justified expectations and the

-17-

certainty, predictability and uniformity of result favor the application of Kentucky law.

IT IS THEREFORE ORDERED that AISLIC's motion for summary judgment is denied.  Res-Care's motion for leave to amend will be called for hearing on May 9, 2005 at 1:30 p.m.  In addition, on or before May 2, 2005, the parties shall submit an initial pretrial order which shall reflect whether additional issues, if any, will be decided under Kansas or Kentucky law.

A motion for reconsideration of this order is not encouraged. Any such motion shall not exceed three pages and shall strictly comply with the standards enunciated by this court in <u>Comeau v. Rupp</u>, 810 F. Supp. 1172 (D. Kan. 1992).  The response to any motion for reconsideration shall not exceed three pages.  No reply shall be filed.

Dated this  12th   day of April 2005, at Wichita, Kansas.


                                        s/ Monti Belot
                                        Monti L. Belot
                                        UNITED STATES DISTRICT JUDGE